## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Masterson Personnel, Inc., Alternative
Staffing, Inc., Vision Staffing Solutions,
Inc., and Purchasing Professionals, Inc.,

                               Plaintiffs,

                                                    Civ. No. 05-1274 (RHK/JJG)
v.                                                  **MEMORANDUM OPINION**
                                                    **AND ORDER**
The McClatchy Company and The Star
Tribune Company,

                               Defendants.

Anne T. Regan, David M. Cialkowski, and J. Gordon Rudd Jr. of Zimmerman Reed P.L.L.P.,
Minneapolis, Minnesota; Boris Parker and Floyd E. Siefferman of Saliterman & Siefferman
P.C., Minneapolis, Minnesota; Clayton D. Halunen and Joni M. Thome of Halunen &
Associates, Minneapolis, Minnesota, for Plaintiffs.

Alison B. Willard, Camille A. Olson, Christopher Paetsch, and Timothy F. Haley of
Seyfarth Shaw L.L.P., Chicago, Illinois; Lianne Knych, Michael F. Cockson, and Edward T.
Wahl of Faegre & Benson L.L.P., Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

Plaintiffs Masterson Personnel, Inc., Alternative Staffing, Inc., Vision Staffing, Inc.,

and Purchasing Professionals, Inc. (collectively "Plaintiffs") allege that Defendants The

Star Tribune Company ("Star Tribune") and The McClatchy Company ("McClatchy") are

engaging in deceptive trade practices by inflating and manipulating circulation figures used

to set advertising rates for the *Star Tribune* newspaper. This matter comes before the

Court on Defendants' Motion to Dismiss all claims against McClatchy, as well as the

claims against Star Tribune for violation of the Minnesota Deceptive Trade Practices Act

("MDTPA") and unjust enrichment, pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants further

move to strike Plaintiffs' prayer for injunctive relief pursuant to Fed. R. Civ. P. 12(f).  For

the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND

McClatchy, a publicly-owned Delaware corporation based in Sacramento,

California, is the eighth largest owner of newspapers in the United States.  (Am. Compl. ¶

5.)  McClatchy owns 30 newspapers in four regions of the United States, including twelve

daily newspapers.  (Id.)  The company's annual revenues are approximately $1.1 billion.

(Id.)  Each of McClatchy's newspapers is "largely autonomous in [its] business and editorial

operations," with publishers and editors making day-to-day operating decisions.  (Am.

Compl. ¶ 15.)  All policies on strategic planning and operating budgets, however, are

"approved or established by [McClatchy's] senior management and Board of Directors."

(Id.)

Star Tribune, a Delaware corporation based in Minneapolis, Minnesota, publishes

the *Star Tribune*, a daily newspaper owned by McClatchy.  (Am. Compl. ¶ 6.)  The *Star

Tribune* is McClatchy's widest-circulating newspaper.  (Am. Compl. ¶ 17.)  In 2004, Star

Tribune generated $309,506,000 in advertising revenues for McClatchy, a five percent

increase from 2003.  (Am. Compl. ¶ 19.)  This increase contributed to McClatchy

"outperform[ing] the industry average" in advertising revenues and retail advertising.  (Am.

Compl. ¶ 20.)

In soliciting for advertising business, Star Tribune represents that an advertisement reaches 834,000 readers daily and 1.2 million readers on Sundays.  (Am. Compl. ¶ 23.)  An advertiser can choose from several different types of advertisements, such as "run of the press" or classifieds, and can also select where to run the advertisement, choosing from different target zones and distribution areas throughout the region.  (Am. Compl. ¶ 24-25.)  The cost of running an advertisement in the *Star Tribune* is based on the type of advertisement used and the circulation volume in the selected distribution area.  (Am. Compl. ¶ 26.)  Star Tribune reports its circulation volume numbers twice annually to the Audit Bureau of Circulations ("Bureau"), an independent auditing organization engaged by advertisers to verify the accuracy of circulation volume for publications nationwide.  (Am. Compl. ¶¶ 29-31.)  The Bureau's mission is to enable advertisers to "plan, purchase, and sell media advertising with confidence."  (Am. Compl. ¶ 32.)

Plaintiffs are Minnesota companies that have placed various advertisements in the *Star Tribune* since 1999.  (Am. Compl. ¶¶ 1-4, 13.)  Based upon information recently provided by several distributors[1] working with Star Tribune, Plaintiffs allege that Star Tribune engages in circulation manipulation activities "in order to attract and retain

---

[1] The Complaint alleges information obtained from a Star Tribune field representative (Am. Compl. ¶ 36), a Star Tribune distributor based in Sioux Falls, South Dakota (Am. Compl. ¶¶ 37-38), a Star Tribune regional manager in Mankato, Minnesota (Am. Compl. ¶ 38), a delivery agency operator based in Minneapolis (Am. Compl. ¶ 39), and a distributor in western Minnesota (Am. Compl. ¶¶ 40-41).

advertising customers, and to set and charge higher advertising rates." (Am. Compl. ¶ 10.)
In support of their claim, Plaintiffs allege several specific acts by Star Tribune.

First, in home delivery areas, Star Tribune adds extra newspapers to each delivery route and requires carriers to continue to deliver newspapers to various individuals who have contacted Star Tribune to have their newspaper delivery stopped while out of town or on vacation. (Am. Compl. ¶ 44A.) Newspapers are also left at schools not in session and at the doors of unoccupied hotel rooms. (Id.) Star Tribune counts these deliveries in its paid circulation numbers.[2] (Id.)

Second, Star Tribune asks distributors to order additional newspapers under the heading of "special events" and advises the distributors to dump any unsold newspapers. (Am. Compl. ¶ 44B.) Star Tribune later credits the distributors' accounts for any unsold newspapers. (Id.) Although the unsold and dumped newspapers are not read by anyone, Star Tribune includes these newspapers in its paid circulation numbers. (Id.) Distributors contracted by Star Tribune to deliver newspapers are required to sign affidavits attesting to the accuracy and legitimacy of circulation numbers. (Am. Compl. ¶ 42.) Some distributors refuse to sign affidavits, while others are coerced and threatened with employment termination if they do not sign affidavits containing false circulation information. (Id.)

Third, Star Tribune developed an incentive program for distributors to encourage large newspaper orders. (Am. Compl. ¶ 44C.) Distributors place orders that far exceed the

---

[2] The Bureau defines "paid circulation" as newspapers which have been paid for by the purchasers and are not for resale. (Am. Compl. ¶ 29.)

number of newspapers that can be actually sold, but Star Tribune pays out bonuses for ordering the papers if the distributor does not return unsold copies.  (Id.)  The unsold newspapers are thrown away, but included in Star Tribune's paid circulation numbers.  (Am. Compl. ¶ 44C.)

Fourth, Star Tribune requires internal non-sales circulation employees to call and ask businesses to pay for newspapers to be delivered to nursing homes or hospitals for individuals who desire to read the papers but may not otherwise be able to afford a subscription.  (Am. Compl. ¶ 44D.)  Participating businesses later receive calls from nursing homes and hospitals requesting cancellation of the charity newspaper subscriptions because the targeted individuals already have subscriptions.  (Id.)  Star Tribune continues to deliver newspapers on the charitable accounts and counts such newspapers in its paid circulation numbers.  (Am. Compl. ¶ 44D.)

Fifth, Star Tribune has established a "courtesy-copy" program for several large businesses and establishments in the Twin Cities area.  (Am. Compl. ¶ 44E.)  For example, the Saint Louis Park Depot is required to give away approximately 10,000 to 30,000 newspapers each day.  (Id.)  Excess papers not given away are put in the trash.  (Am. Compl. ¶ 44E.)  Star Tribune reports these "Paid-Plus" program newspapers in its paid circulation numbers to the Bureau.  (Id.)

Finally, Star Tribune inflates circulation through delivery of unwanted newspapers to local schools.  (Am. Compl. ¶ 44F.)  For example, a distributor was asked to deliver up to 700 newspapers per week to a senior high school for a four-week period.  (Id.)  When the

distributor inquired at the school about the proposed delivery, the school indicated that it was not interested in receiving the newspapers.  (Am. Compl. ¶ 44F.)  Although the delivery was never made to the school, the newspapers were still counted in Star Tribune's paid circulation numbers.  (Id.)

On June 28, 2005, Plaintiffs commenced this action alleging four claims: (1) deceptive trade practices under Minn. Stat. § 325D.44, (2) false statements in advertising under Minn. Stat. § 325F.67, (3) consumer fraud under Minn. Stat. § 325F.69, and (4) unjust enrichment.  (Compl. at 16-20.)  On August 5, 2005, Plaintiffs amended the Complaint to include a claim for breach of contract.  (Am. Compl. ¶¶ 82-85.)  Plaintiffs bring their claims under Fed. R. Civ. P. 23, on behalf of all similarly situated parties throughout the United States who have placed advertisements in the *Star Tribune* during the past six years.  (Am. Compl. ¶ 45.)

## STANDARD OF REVIEW

When considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court looks to factual allegations in the complaint.  Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989). All factual allegations must be accepted as true, and every reasonable inference must be made in favor of the plaintiff.  Fed. R. Civ. P. 12(b)(6); Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994).  The Court will not consider conclusory allegations or "blindly accept legal conclusions drawn by the pleader of the facts." Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981); Westcott v. Omaha, 901

6

F.2d 1486, 1488 (8th Cir. 1990).  In addition to the complaint, the Court may also consider "materials embraced by the pleadings and materials that are part of the public record."  In re K-tel Int'l Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002) (citations and internal quotations omitted).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## ANALYSIS

On this Motion, McClatchy urges dismissal of all claims against it.  First, McClatchy seeks dismissal of the fraud claims based on Plaintiffs' failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Second, McClatchy seeks dismissal of the breach of contract and unjust enrichment claims because Plaintiffs cannot show that as a parent company, McClatchy is responsible for any contracts made by its subsidiary.

In addition to the foregoing, Star Tribune seeks dismissal of two claims against it.  First, Star Tribune seeks dismissal of the claim for violation of the MDTPA based on Plaintiffs' failure to establish a likelihood of future harm, and asks this Court to strike Plaintiffs' prayer for injunctive relief.  Second, Star Tribune seeks dismissal of the unjust enrichment claim based on Plaintiffs simultaneous allegation of a breach of contract claim. The Court will address each argument in turn.

**A.      Plaintiffs' Claims against McClatchy for Fraud**

Plaintiffs allege three fraud claims against McClatchy: (1) deceptive trade practices under Minn. Stat. § 325D.44, (2) false statements in advertising under Minn. Stat. § 325F.67, and (3) consumer fraud under Minn. Stat. § 325F.69. (Am. Compl. at 19-22.) McClatchy seeks dismissal of these claims based on Plaintiffs' failure to plead them with the particularity required by Fed. R. Civ. P. 9(b). (Mem. in Supp. at 11-14.)

Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be plead with particularity." In order to meet this heightened pleading requirement, a plaintiff must set forth the "who, what, when, where and how" for each fraud claim in a complaint. Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997). "Because one of the main purposes of [Rule 9(b)] is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. Inv. Inc. v. Quality Inns Int'l Inc., 61 F.3d 639, 644 (8th Cir. 1995) (internal citation omitted). Rule 9(b) applies to both common law and statutory fraud claims made under Minnesota law where "the gravaman of the complaint is fraud." Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 963 (D. Minn. 2003); United States v. Napco Int'l, Inc., 835 F. Supp. 493, 495 (D. Minn. 1993).

In arguing for dismissal of the fraud claims, McClatchy points out that Plaintiffs make only three factual allegations concerning the company:

(1) McClatchy owns Star Tribune Company, which publishes the *Star Tribune* newspaper;

8

(2) while "publishers and editors [of Star Tribune] make day-to-day decisions, policies on strategic planning and operating budgets, including pricing matters, are approved or established by McClatchy's senior management and/or Board of Directors;" and

(3) "advertising is McClatchy's principal source of revenues" and "circulation advantage is of primary importance in attracting advertising."

(Am. Compl. ¶¶ 5, 15.)  The second and third statements derive from McClatchy's 10-K report filed with the Securities and Exchange Commission in 2004.  (Am. Compl. ¶ 15.) McClatchy argues that Plaintiffs should not be allowed to "pursue spurious allegations of wrongdoing against [it] based upon nothing beyond speculation that McClatchy must have had something to do with Star Tribune's activities aimed allegedly at falsifying circulation numbers because McClatchy's 2004 10-K emphasizes the importance of advertising and circulation growth."  (Mem. in Supp. at 13.)

While Plaintiffs do not specifically respond to McClatchy's Rule 9(b) argument, they contend that additional factual inferences support their fraud claims.  (Mem. in Opp'n at 5-11.)  First, Plaintiffs argue that McClatchy must control Star Tribune's advertising decisions because the company derives eighty-five percent of its revenue per year from advertising.  (Mem. in Opp'n at 8; Am. Compl. ¶ 16.)  Second, Plaintiffs argue that McClatchy must be involved in Star Tribune's alleged misconduct because McClatchy assumed ownership of Star Tribune immediately prior to the institution of new policies disputed in this case.[3]  (Mem. in Opp'n at 9; Am. Compl. ¶ 38.)  Based on these inferences,

---

[3] Specifically, the Complaint (¶ 38) alleges

as well as the three factual allegations cited in the Complaint, Plaintiffs argue that McClatchy is "liable to Plaintiffs for [its] direct participation in the circulation scam that caused Plaintiffs to pay more for advertising than they should have." (Mem. in Opp'n at 11; Am. Compl. ¶ 35.)

Plaintiffs have failed to plead their claims against McClatchy with particularity. Rule 9(b) applies to the three fraud claims alleged by Plaintiffs. Tuttle, 118 F. Supp. 2d at 963 (finding Rule 9(b) applies to claims brought under Minn. Stat. §§ 325F.69, 325D.13, and 325F.67). While the Complaint is filled with factual allegations concerning Star Tribune and its alleged misconduct, the "what, when, where and how" of McClatchy's involvement is missing. The Complaint alleges that McClatchy owns Star Tribune, oversees policy implementation by Star Tribune, and derives most of its revenue from advertising sales by Star Tribune. (Am. Compl. ¶¶ 5, 15.) There are no factual allegations discussing specifically what fraudulent actions were taken by McClatchy, when these actions were taken, and how any actions played a part in the alleged misconduct by Star Tribune. The Complaint fails "to appraise [McClatchy] of the claims against [it] and the acts relied upon as constituting the fraud charged." See Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir.

---

After McClatchy assumed ownership of Star Tribune, single copy distributors were required to keep their return percentages below 25% for weekly editions and 20% for the Sunday edition. That policy later changed to 19% for the weekly edition and 18% for the Sunday edition. [A] distributor complained to Star Tribune's circulation management in Minneapolis, informing management that it was impossible to sell all of the papers sent. Star Tribune responded by saying that there was nothing they could do.

1982).  Based on Plaintiffs' failure to plead the fraud claims against McClatchy with the

particularity required by Fed. R. Civ. P. 9(b), those claims will be dismissed.

**B.      Plaintiffs' Claims against McClatchy for Breach of Contract and Unjust Enrichment**

McClatchy seeks dismissal of the breach of contract and unjust enrichment claims

as a matter of law because Plaintiffs cannot show that as a parent company, McClatchy is

responsible for any contracts made by its subsidiary.  (Mem. in Supp. at 4-5, 8.)  Plaintiffs

argue that "McClatchy is vicariously liable for Star Tribune's acts because Star Tribune is

McClatchy's agent."  (Mem. in Opp'n at 6.)

A parent corporation may be directly involved in the activities of its subsidiary

without incurring liability, so long as the involvement is "consistent with the parent's

investor status."  United States v. Bestfoods, 524 U.S. 51, 72 (1998).  Appropriate "parental

involvement" includes "monitoring of the subsidiary's performance, supervision of the

subsidiary's finance and capital budget decisions, and articulation of general policies and

procedures."  Bestfoods, 523 U.S. at 72.  For a parent corporation to be held liable, it must

actually "manage, direct, or control operations" for the subsidiary.  Id. at 67; United States

v. Days Inns of America, Inc., 151 F.3d 822, 825 (8th Cir. 1998).  When a plaintiff is

seeking to hold a parent corporation liable for the actions or contracts of its subsidiary, "it

is incumbent on the plaintiff to show that the parent corporation caused the affairs of the

subsidiary to be so controlled and managed that it could be said that the subsidiary was a

mere instrumentality or adjunct or agency of the parent." Majestic Co. v. Orpheum Circuit, Inc., 21 F.2d 720, 725 (8th Cir. 1927).

In this case, the Complaint does not contain factual allegations to support Plaintiffs' claim that McClatchy is acting beyond the parameters of its status as an investor in Star Tribune. Plaintiffs allege McClatchy owns Star Tribune, approves "policies on strategic planning and operating budgets, including pricing matters," and derives most of its revenue from advertising sales by Star Tribune. (Am. Compl. ¶¶ 5, 15.) These activities, however, constitute appropriate parental involvement and do not support Plaintiffs' claims. See Bestfoods, 523 U.S. at 72. In fact, the Complaint states that "each of [McClatchy's] newspapers is largely autonomous in its business and editorial operations so as to most effectively meet the needs of the communities it serves." (Am. Compl. ¶ 15.) In response to this statement, Plaintiffs argue that although McClatchy has "ceded day-to-day decisions to local editors,.... it is highly dubious that in matters having an impact on McClatchy's advertising revenue, McClatchy abjures control." (Mem. in Opp'n at 8.) This conclusory allegation is precisely the type of statement the Court will not consider as a foundation for Plaintiffs' claims. See Kaylor, 661 F.2d at 1182; see also Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (on a motion to dismiss, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations"). Plaintiffs have failed to make adequate factual allegations to support their claims for breach of contract and unjust enrichment against McClatchy. Therefore, those claims will be dismissed.

**C.**     **Plaintiffs' Claim against Star Tribune for Violation of the MDTPA and Prayer for Injunctive Relief**

Star Tribune seeks dismissal of the MDTPA claim based on Plaintiffs' inability to establish a likelihood of future harm, an essential element of the claim.  (Mem. in Supp. at 14-15.)  Star Tribune also moves to strike Plaintiffs' prayer for injunctive relief based on failure of the MDTPA claim.  (Mem. in Supp. at 17.)  Plaintiffs counter that continued use of Star Tribune's advertising services by their companies and other purported class members creates a proper foundation for the MDTPA claim and the corresponding claim for injunctive relief.  (Mem. in Opp'n at 22-25.)

Minnesota law prohibits individuals from engaging in "deceptive trade practices" in the course of business, vocation or occupation.  Minn. Stat. § 325D.44 (2005).  Plaintiffs allege that Star Tribune has engaged in conduct that constitutes deceptive trade practices under the statute, including:

> [Star Tribune] has violated Minn. Stat. § 325D.44(5) by representing that paid circulation has been audited and approved by [the Bureau], and therefore that advertising rates have been honestly set;

> [Star Tribune] has violated Minn. Stat. § 325D.44(7) by representing that their paid circulation and advertising services are of a particular quality and standard, correlating inflated circulation numbers with market penetration, when in fact the advertising services are not efficacious and of the quality [Star Tribune] represent[s] - specifically, advertisements placed in the *Star Tribune* do not have the readership [represented by Star Tribune];

> [Star Tribune] has violated Minn. Stat. § 325D.44(9) by advertising the *Star Tribune's* advertising services knowing that such services will not be fully carried out — specifically, that advertisements placed in the *Star Tribune* would not have the represented readership; and

> [Star Tribune] has violated Minn. Stat. § 325D.44(13) by creating a likelihood
> of confusion about the efficacy of their advertising services, correlating
> inflated circulation numbers with market penetration, and basing advertising
> rates on overstated circulation numbers.

(Am. Compl. ¶¶ 60-63.)  The "sole statutory remedy for deceptive trade practices is

injunctive relief."  Simmons v. Modern Aero, Inc., 603 N.W.2d 336, 339 (Minn. Ct. App.

1999) (citation omitted).

In this case, Star Tribune seeks dismissal of the MDTPA claim based on Plaintiffs'

failure to plead an essential element of the claim — a likelihood that Plaintiffs will suffer

future harm.  (Mem. in Supp. at 14.)  "Because the MDTPA provides [injunctive] relief for

'a person likely to be damaged,' it provides relief from future damage, not past damage."

Lofquist v. Whitaker Buick-Jeep-Eagle, Inc., C5-01-767, 2001 WL 1530907 at *2 (Minn.

Ct. App. Dec. 4, 2001).  Star Tribune relies primarily Gardner v. First Am. Title Ins. Co.,

296 F. Supp. 2d 1011 (D. Minn. 2003), and Four D, Inc. v. Dutchland Plastics Corp., Civ.

01-2073, 2002 WL 570655 (D. Minn. April 15, 2002), to support its argument for

dismissal.  (Mem. in Supp. at 14-15; Reply Mem. at 11-12.)  In Gardner and Four D, this

Court dismissed MDTPA claims based on Plaintiffs' failure to provide evidence showing a

likelihood of future harm.  Gardner, 296 F. Supp. 2d at 1021; Four D, 2005 WL 570655 at

* 5.  Both cases, however, are procedurally distinguishable from this case.  In Gardner, this

Court dismissed a MDTPA claim on the defendant's motion for summary judgment, noting

that the plaintiffs' failed to "advance record evidence to support an inference of future

harm."  296 F. Supp. 2d at 1020.  In Four D, this Court dismissed a MDTPA claim on the

defendant's motion for judgment on the pleadings, based on the plaintiffs' failure to request injunctive relief.  2005 WL 570655 at *5.  It bears repeating that, at this early stage of the present case, the Court will only dismiss Plaintiffs' claim if it "appears beyond a reasonable doubt that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Plaintiffs have alleged sufficient facts to survive Star Tribune's Motion.  In the Complaint, Plaintiffs state that "injunctive and declaratory relief is appropriate as Defendants continue to act in the manner complained of; injunctive relief against further misconduct is important to prevent [Plaintiffs] and potential class members from incurring additional overcharges in the future."  (Am. Compl. ¶ 53.)  Further, unlike the plaintiff in Four D, Plaintiffs specifically request an "award [for] injunctive relief prohibiting the unlawful practices" set forth in the Complaint.  (Am. Compl. at 24.)  Plaintiffs also argue that the likelihood of future harm exists because they continue to use and pay for Star Tribune's advertising services.  (Mem. in Opp'n at 24.)   These allegations provide a proper basis for Plaintiffs' MDTPA claim.  Accordingly, Star Tribune's Motion to Dismiss the MDTPA claim and Motion to Strike Plaintiffs' prayer for injunctive relief will be denied.

**D.**     **Plaintiffs' Claim against Star Tribune for Unjust Enrichment**

Star Tribune argues for dismissal of the unjust enrichment claim because "Minnesota law does not allow claims for unjust enrichment where there is an actual contract between the parties."  (Mem. in Supp. at 18.)  While this statement of Minnesota law is correct, Northwest Airlines v. Astraea Aviation Serv., 111 F.3d 1386, 1392 n.4 (8th

Cir. 1997), Star Tribune's argument is not appropriate at this early stage of the case.

Plaintiffs have provided adequate factual grounds and properly pled the unjust enrichment

claim as an alternative to the breach of contract claim. Fed. R. Civ. P. 8(e)(2) ("A party

[may] set forth two or more statements of a claim or defense alternately.... *regardless of*

*the consistency.*") (emphasis added); see also Isra Fruit, Ltd. v. Agrexco Agric. Exp. Co.,

631 F. Supp. 984, 987 (S.D.N.Y. 1986) (on a motion to dismiss under Rule 12(b)(6),

allowing the plaintiff to simultaneously pursue breach of contract and unjust enrichment

claims). Therefore, Star Tribune's Motion to Dismiss the unjust enrichment claim will be

denied.

## CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, it is

**ORDERED** that

1.    Defendants' Motion to Dismiss (Doc. No. 7) is **GRANTED** with respect to
      all claims against Defendant The McClatchy Company, but **DENIED** with
      respect to claims against Defendant Star Tribune Company;

2.    Defendants' Motion to Strike (Doc. No. 7) is **DENIED**; and

3.    All claims against Defendant McClatchy Company in the Amended
      Complaint (Doc. No. 2) are **DISMISSED WITH PREJUDICE**.

Dated: November 22, 2005                          s/Richard H. Kyle
                                                  RICHARD H. KYLE

16

United States District Judge